IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DAVID NIEVES,

       Petitioner,

v.                                       CASE NO. 1:11-cv-235-RV-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  The Petition stems from Petitioner's Alachua County, Florida, conviction for second-degree murder, for which Petitioner is serving a twenty-year sentence in the Department of Corrections.  Respondent filed a response and an appendix with relevant portions of the state-court record.  Doc. 20.  Petitioner filed a reply.  Doc. 26.  Upon due consideration of the Petition, the response, the reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

### State-Court Proceedings

The relevant portions of the record may be summarized as follows.  Petitioner and his co-defendants were initially charged with attempted first degree murder,

_____

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

robbery with a firearm, conspiracy, and kidnaping.  Doc. 20-1 at 27.  The charges were

filed as a result of an incident where the victim, a drug dealer, was robbed and beaten

with a gun at a Red Roof Inn in Gainesville.

The Public Defender's Office was initially appointed to represent Petitioner at his

initial appearance on November 7, 2006, but moved to withdraw as counsel for

Petitioner on November 14, 2006, after discovery of a conflict.  Doc. 20-1 at 29-30, 31.

The Court then appointed attorney H. Lee Greenway to represent Petitioner.  Doc. 20-1

at 35.  In May of 2007 after the victim of the crime died, an indictment was returned

against Petitioner charging him with first degree murder and robbery with a firearm.

Doc. 20-1 at 44.  On July 3, 2007, attorney Greenway moved to withdraw as counsel for

Petitioner because he accepted an offer to join the State Attorney's Office.  Doc. 20-1

at 49.  The Court then appointed attorney James J. Connor as substitute counsel.  Doc.

20-1 at 50.

On October 29, 2007, Petitioner filed a motion to enter a plea of nolo contendere

to second degree murder, a lesser-included offense, in exchange for a twenty-year

sentence.  Doc. 20-1 at 53-56.  The plea was accepted and Petitioner was sentenced

on the same day to twenty years imprisonment.  Doc. 20-1 at 57-61.  After appeal,

Petitioner's conviction and sentence were affirmed *per curiam*.  Doc. 20-1 at 121.

Petitioner filed a postconviction motion pursuant to Fla. R. Crim. P. 3.850,

asserting that his counsel rendered ineffective assistance because Petitioner's counsel:

(1) advised him that Petitioner's mere presence at the scene of the crime made him

guilty; and (2) failed to advise Petitioner of the availability of the independent act

defense.  Doc. 20-1 at 149-61.  The state court ordered an evidentiary hearing on the

motion and appointed counsel to represent Petitioner.  Doc. 20-2 at 173-74.

Following the evidentiary hearing, the state trial court denied Petitioner's motion.

Doc. 20-2 at 217-21.  Petitioner then moved for rehearing.  Doc. 20-2 at 281-88.  The

trial Court denied Petitioner's motion for rehearing.  Doc. 20-2 at 290.  Petitioner

appealed the denial of his 3.850 motion.  Doc. 20-2 at 292.  The First DCA *per curiam*

affirmed.  Doc. 20-3 at 155.  The mandate issued on April 21, 2011.  Doc. 20-3 at 157.

Petitioner then filed the instant habeas corpus petition on October 27, 2011,

which Respondent concedes is timely.  Doc. 20 at 5.

### Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and

convincing evidence that the state court's factual determination was "objectively

unreasonable" to rebut the presumption that the determination was correct. *Gill v.*

*Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); see § 2254(e) (1).  "'[A] state-court

factual determination is not unreasonable merely because the federal habeas court

would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* ___

*U.S.* ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130

S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them.") *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue.)

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.' " *Jones v. GDCP Warden*, ___ F.3d ___, 2014 WL 1088312, at *10 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, ___ U.S.

___, 134 S.Ct. 1697, 1702 (2014).  "Under § 2254(d)(1)'s 'unreasonable application'

clause, we grant relief only 'if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case.' " *Jones*, 2014 WL 1088312, at *10 (alteration in

original) (quoting *Williams*, 529 U.S. at 413).  The Supreme Court has interpreted §

2254(d) as requiring that, "a state prisoner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 786–87

(2011).  "[A]n 'unreasonable application' of [Supreme Court] holdings must be

'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice."

*Woodall*, 134 S.Ct. at 1702.  In other words, Petitioner must establish that no

fairminded jurist would have reached the Florida court's conclusion.  *See Richter*, 131

S.Ct. at 786–87; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58

(11th Cir.2012).  "If this standard is difficult to meet, that is because it was meant to be."

*Richter*, 131 S.Ct. at 786.

    In light of *Gill,* the "unreasonable determination of facts" standard plays a limited

role in habeas review because the district court considers the reasonableness of the

trial court's fact finding only to the extent that the state court's ultimate conclusion relied

on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer

"the only question that matters[:]" whether the state court's decision was objectively

unreasonable."  *Gill*, 133 F.3d at 1290.

## Standard of Review for Ineffective Assistance Claims

The highly deferential standard of Section 2254 carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Burt*, 2013 WL 5904117, *4 (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976.)  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted.)  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.  AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

fairminded disagreement.'"  *Burt*, 2013 WL 5904117, *4 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011.))  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'"  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 131 S.Ct. at 786.)

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Harrington,* 131 S.Ct. at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## DISCUSSION

Petitioner raises two grounds for relief: (1) that counsel was ineffective for incorrectly advising him that he could be found guilty for his "mere presence" at the scene of the crime; and (2) that counsel was ineffective for failing to advise him of the "independent act" defense.  Petitioner presented both of these grounds in his Rule 3.850 postconviction motion.  The state court held an evidentiary hearing on both grounds in the motion, and issued a written opinion denying relief, which was *per curiam* affirmed by the First DCA.  Because the state court addressed both grounds

jointly, the Court also will address both grounds together.

James Connor, who represented Petitioner at his plea, and Lee Greenway, who represented Petitioner prior to his move to the State Attorney's Office, testified at the hearing.

Attorney James Connor testified that he represented to the state court at the plea hearing that he had exhausted his knowledge and abilities in the case and was of the opinion that Petitioner did not have a viable defense at the time of the plea.  Doc. 20-3 at 59.  Mr. Connor also testified that although he did not use the term "independent act," he discussed the concept with Petitioner, using the term "intervening force," and illustrated his point with a hypothetical about going for a beer run with a friend that had a gun.  Doc. 20-3 at 59-60; 82.

Mr. Connor did not discuss the defense of "mere presence," with Petitioner, because he determined that the defense was not available to Petitioner.  Mr. Connor testified, that given the facts of the case as he understood them:

> To make an argument, well, gee, he was just merely present, I've got to convince six people that this was just a little bit like going to Publix, and on the way to Publix, stopping off at the sub shop.  This was a planned, conscious effort to take a relatively long trip, if one were to accept they came to buy drugs – now, I don't know much about Orlando, but I think they probably have drugs in Orlando.  So they're making this very long trip together to do a drug deal.  But somehow, Mr. Nieves just sort of happened to be in the car.  And sir, that's not an argument I could make to a jury with any type of success.

Doc. 20-3 at 62-63.

When asked why he did not tell Petitioner that the defense existed, Mr. Connor testified that he would not have told Petitioner that he had a defense in a situation

where there were no facts support such a defense.  Doc. 20-3 at 64.  Mr. Connor was

also concerned about the concept of felony murder, because Petitioner had admitted

he had come to Gainesville from Orlando to purchase cocaine.  Consequently, even if

Mr. Connor had been able to convince the jury that this was a drug sale gone wrong –

not a drug rip-off, as he believed – Petitioner still would have been involved in the

commission of a felony at the time of the murder.  Mr. Connor testified that he told

Petitioner about this concept, and that Petitioner understood.  Doc. 20-3 at 79-80.

Attorney Lee Greenway, who represented Petitioner prior to his move to the

State Attorney's Office, also testified at the evidentiary hearing.   Mr. Greenway was

asked whether he considered the independent act defense, and he responded:

> [B]ased on his testimony, what he said happened, I think that was
> probably his best defense.  But there were other facts in the case that
> certainly would not tail in with that defense too well.  But that's the nature
> of any case.  All the facts don't always hit your side of the case.  But I –
> certainly, it was something that I know I was considering, and I know I
> discussed it with him.  Now, do I recall specifically using the words with
> him independent act?  I can't tell you I did that, or whether I did or not.  But
> those were certainly along the lines, because that's what he was telling
> me.

Doc. 20-3 at 123-24.

Mr. Greenway also testified that he was "sure" he discussed the concept of

felony murder in connection with the independent act defense.  Doc. 20-3 at 124.

The state trial court judge specifically asked  Mr. Greenway "Did you ever tell Mr.

Nieves that he could get life in prison merely for being present at the scene?"  Mr.

Greenway responded: "No.  I would have never told somebody that.  That's not the

state of the law then or now, as I know it.  Just for being present?  No."  Doc. 20-3 at

126-27.

During the evidentiary hearing, the state trial court judge stated, while discussing

the issues before the court:

> The first one being the issue that counsel, in discussions with the – with
> Mr. Nieves, indicated to him that he could be convicted merely by being
> present at the scene and given life in prison, and that – that that coerced
> him to enter a plea in this case.  That that's – that's one issue, which is to
> – I would find has been conclusively refuted by the record, in terms of
> both attorneys that represented him denied ever making such a statement
> to him; that there's no evidence at all anywhere in the record now at this
> point that such a representation was made to him that he could have
> relied upon.

> Doc. 20-3 at 128-29.

In rejecting both grounds of Petitioner's postconviction motion, the state court

wrote:

> Former defense counsel James Connor testified at the hearing that he did
> not believe that Defendant has a viable defense to the charges, which at
> the time of the plea were First-Degree murder and Robbery with a
> Firearm.  See Indictment.  Connor indicated that he did discuss the
> concepts of felony murder and "independent act" defense with Defendant,
> though he did not use that terminology.  Connor additionally testified that,
> based on the evidence in this case, it was clear to him that Defendant was
> *not merely present* at the time of the offense.  Instead, Connor says that
> the evidence reflected Defendant as a participant in the robbery ("drug rip-
> off") of the victim.  Having reviewed the transcript of co-defendant Jerry
> Rodriguez's trial, counsel was aware that the testimony in that case
> showed that Defendant knew, prior to entering the hotel room where the
> offense occurred, that his co-defendant Jerry Rodriguez had a firearm and
> that both men were intending to rob the victim.  Furthermore, there was
> testimony at the Rodriguez trial which suggested that Defendant helped
> control the victim while the beating by the co-defendant occurred; and,
> that Defendant did not flee the scene until *after* the robbery took place, *at
> the same time as his co-defendants*. Counsel denies ever advising
> Defendant that his "mere presence" at the scene of the crime was enough
> for him to be convicted of felony murder.

Former defense counsel Lee Greenway testified at the hearing that, according to Defendant, Defendant only came to Gainesville with his co-defendant Jerry Rodriguez to buy drugs.  However, just like defense counsel James Connor, Greenway was familiar with the testimony of co-defendant Ashley Chaganis at co-defendant Jerry Rodriguez's trial.  That testimony indicated that, although Defendant has no intent to physically harm the victim, he was complicit in the robbery.  Furthermore, Greenway's notes indicate that Defendant admitted during their discussions to knowing about the robbery in advance, as well as knowing about the gun.  Greenway, like Connor, did discuss the concept of felony murder and the "independent act" defense with Defendant, though not in those words.

Based on the testimony of both former counsel at the hearing, this Court finds that (1) neither counsel misadvised Defendant that his "mere presence" at the scene of the crime was sufficient for him to be convicted of felony murder and sentenced to life in prison; and (2) both counsel advised Defendant of the elements of felony murder and how his involvement in the robbery would preclude him from having a viable "independent act" defense.  The testimony of Greenway, based on notes from his discussions with Defendant, shows that Defendant admittedly participated in the robbery, albeit reluctantly. This Court has no reason to believe that Defendant wanted to be involved in either the robbery or the beating of the victim which ultimately led to the victim's death. Regardless, Defendant was made fully aware by both of his counsel that, were he to proceed, to trial, there was a strong probability that the jury would find his involvement in the robbery equated to felony murder, despite his claim that the robbery and the beating of the victim were independent acts of co-defendant Jerry Rodriguez.

Doc. 20-2 at 219-21.  (Citations omitted.)

Thus, the state court found that counsel was not ineffective because counsel did not misadvise Petitioner that his mere presence at the scene of the crime was enough for him to be convicted, and counsel did not fail to advise Defendant about the independent act defense.

In making this determination, the state court necessarily considered the

credibility of both trial counsel.  "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'"  *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)).  Questions about the credibility of a witness involve a question of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court."  *Id.*  It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence.  *Burt v. Titlow,* ___ *U.S.* ___,  2013 WL 5904117, *4.

Petitioner points to the testimony of his interpreters in an effort to support his claim that his counsel was ineffective.  Although Interpreter Eduardo Arenas testified that he did not recall any defenses being discussed, he also said that he could not remember whether or not there were any conversations about defenses in the case, and stated there may have been.  Doc. 20-3 at 44.  Interpreter Gilberto de Paz testified that he did work as an interpreter in the case, but remembered very little – "bits and pieces."  Doc. 20-3 at 47.  De Paz candidly stated that his interpretive service in the case "was a very long time ago.  And personally, I – every time I finish with a procedure, I try to completely erase it from my mind."  Doc. 20-3 at 47.  This testimony falls well short of meeting Petitioner's burden of showing clear and convincing evidence to rebut the presumption of the correctness of the state trial court's factual determination and for that matter does very little to refute or even challenge the testimony of attorneys Connor or Greenway.

Accordingly, on this record, and in view of the deference afforded to the state court's rejection of Petitioner's ineffective-assistance claim on the merits, the Court has no difficulty concluding that Petitioner has failed to show that he is entitled to federal habeas corpus relief.

### Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

In light of the foregoing, it is respectfully **RECOMMENDED:**

1.   The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

(Doc. 1) should be **DENIED.**

2.   A certificate of appealability should be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this 16th day of December 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.